UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NELSON'S CABINETRY, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 24-1335 (PLF) |
| ANTONY J. BLINKEN, Secretary of State, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

## OPINION

Plaintiff Nelson's Cabinetry, Inc., a Virginia corporation, filed an employment-based visa petition on behalf of Carlos Eduardo Pimentel, an employee of Nelson's Cabinetry and a Brazilian national. The consular officer ultimately denied Mr. Pimentel's visa application. Mr. Pimentel, members of his family, Karen Gasparetto Pimentel and Lucas Gasparetto Pimentel, and Nelson's Cabinetry have brought this action against U.S. Secretary of State Antony Blinken, U.S. Attorney General Merrick B. Garland, and U.S. Consul General, Rio De Janeiro, Jacqueline Ward, challenging the denial. Pending before the Court is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon careful consideration of the parties' written submissions and the relevant authorities, the Court grants defendants' motion and dismisses the complaint.[1]

---

[1]     The Court has reviewed the following papers in connection with this matter: Plaintiffs' Complaint for Declaratory and Injunctive Relief and Review of Agency Action Under the Administrative Procedure Act ("Compl.") [Dkt. No. 1]; Defendants' Motion to Dismiss

I. BACKGROUND

*A. Statutory Background*

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., sets out the process by which noncitizens apply for visas to enter the United States. The particular visa category at issue in this case is an EB-3 visa, which is an employment-based visa for "[s]killed workers, professionals, and other workers." See 8 U.S.C. § 1153(b)(3); accord Cheng v. Blinken, Civil Action No. 23-02602 (JDB), 2024 WL 4345831, at *1 (D.D.C. Sept. 30, 2024).

To initiate the process for obtaining an EB-3 visa, a prospective U.S. employer or the noncitizen visa applicant must first file a Form I-140, Immigrant Petition for Alien Work, which the United States Citizenship and Immigration Services ("USCIS") uses to confirm that the noncitizen applicant is eligible for the intended visa category. See 8 U.S.C. §§ 1154(a)(1)(E), (F); see also 8 C.F.R. §§ 204.5(a), (c). USCIS investigates the petition and will approve the petition if the applicant demonstrates eligibility. See 8 U.S.C. § 1154(b); 8 C.F.R. § 204.5(g)-(n). If the petition is approved, the applicant is placed in a queue to submit a visa application, which is subject to certain numerical limitations prescribed by the INA for the number of employment-based visas made available each year. See 8 U.S.C. §§ 1151(d), 1152, 1153(b).

If the applicant is permitted to submit a visa application, and if the applicant is located outside of the United States, USCIS sends the approved Form I-140 to the State Department's National Visa Center ("NVC") for pre-processing. See 8 C.F.R. § 204.5(n)(1). The NVC then contacts the applicant to request certain documentation and an application fee.

---

("Mem.") [Dkt. No. 11]; Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp.") [Dkt. No. 14]; and Defendants' Reply to Pls. Opp. ("Reply") [Dkt. No. 17].

See 22 C.F.R. §§ 42.63(a)(1), (c), 42.71(b).  Once an applicant has completed these

requirements, the NVC will schedule an interview with a consular officer at the U.S. Consulate

in the applicant's home country.  See 22 C.F.R. § 42.62.  During the interview, the applicant

makes and executes a visa application.  See 8 U.S.C. §§ 1201(a)(1), 1202(a)-(b); 22 C.F.R.

§§ 42.61, 42.62.  The applicant bears the burden of showing that he or she is eligible to receive a

visa.  See 8 U.S.C. § 1361.  After the visa application is executed, the consular officer is required

to either issue a visa or refuse the visa application.  See 8 U.S.C. § 1201(g); 22 C.F.R. § 42.81(a).

In the event that the consular officer refuses the visa application, the officer is required to

provide the applicant "with a timely written notice" that "states the determination" and "lists the

specific provision or provisions of law under which the alien is inadmissible."  8 U.S.C.

§ 1182(b)(1).

### B.  Factual and Procedural Background

Mr. Pimentel, his wife, Karen Gasparetto Pimentel, and their child, Lucas

Gasparetto Pimentel, entered the United States in July 2015 on B-2 tourist visas.  Compl. ¶ 52.

On January 6, 2016, several weeks before their tourist visas were set to expire on January 20,

2016, Mrs. Gasparetto filed an I-539 Application to Extend/Change Nonimmigrant Status, which

USCIS approved on February 29, 2016.  Id. ¶¶ 52-54.[2]

---

[2]    Plaintiffs refer to Karen Gasparetto Pimentel as Mrs. Gasparetto.  The Court will
therefore refer to her as the same.

While not relevant to the instant action, an I-539 Application to Extend/Change
Nonimmigrant Status allows, inter alia, "[c]ertain nonimmigrants" to extend their stay or change
their nonimmigrant status.  See I-539, Application to Extend/Change Nonimmigrant Status,
USCIS, at https://www.uscis.gov/i-539 (last visited on October 29, 2024).

On July 25, 2018, Nelson's Cabinetry filed a Form I-140, Immigrant Petition for

Alien Work, on behalf of Mr. Pimentel. Compl. ¶ 56. USCIS approved the petition on

August 30, 2018, and transferred the visa case to NVC sometime in September 2018. Id.

¶¶ 56-57. Mr. Pimentel and his family submitted the required information and NVC transferred

the visa application to the U.S. Consulate in Rio de Janeiro, Brazil. Id. ¶¶ 58-59.[3]

On February 8, 2019, Mr. Pimentel and his family attended their interviews with

the consular officer in Rio de Janeiro. Compl. ¶ 60. The consular officer did not approve the

visa application and notified the family that additional processing was required. Id. ¶ 61.

Several months later, and without prior notification, Mr. Pimentel became aware that his visa

application had been denied after checking "the NVC case status website." Id. ¶ 62. On May 10,

2019, Mr. Pimentel, through counsel, sent an email to the U.S. Consulate inquiring into the

reasons for the denial. Id. The U.S. Consulate responded several days later and attached a copy

of Mr. Pimentel's "denial notice." Id. ¶ 63.

The denial notice listed two grounds for Mr. Pimentel's ineligibility to receive the

EB-3 visa. Compl. ¶ 64. First, Mr. Pimentel was found ineligible under 8 U.S.C.

§ 1182(a)(6)(C)(i), which provides that "[a]ny alien who, by fraud or willfully misrepresenting a

material fact, seeks to procure (or has sought to procure or has procured) a visa, other

documentation, or admission into the United States or other benefit provided under this chapter

---

[3]    The complaint states that Mrs. Gasparetto and Lucas Gasparetto Pimentel
submitted documentation and applications along with Mr. Pimentel. See, e.g., Compl. ¶ 61
(stating that the U.S. Consulate denied "Mr. Pimentel and his derivatives' immigration
applications"). Defendants point out that under 8 U.S.C. § 1153(d), "[a] spouse or child . . . [is]
entitled to the same status" as the primary applicant. See Mem. at 4 n.3. Plaintiffs do not
provide a reason why the Court should consider each application separately. The Court therefore
focuses its analysis on the denial of Mr. Pimentel's visa application.

is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i); Compl. ¶ 64.  Second, Mr. Pimentel was found

ineligible under 8 U.S.C. § 1182(a)(9)(B)(i)(I), which provides that:

> [a]ny alien who . . . was unlawfully present in the United States for
> a period of more than 180 days but less than 1 year, voluntarily
> departed the United States (whether or not pursuant to section
> 1254a(e)2 of this title) prior to the commencement of proceedings
> under section 1225(b)(1) of this title or section 1229a of this title,
> and again seeks admission within 3 years of the date of such alien's
> departure or removal . . . is inadmissible.

8 U.S.C. § 1182(a)(9)(B)(i); see Compl. ¶ 64.  The information provided by the U.S. Consulate

"did not include any factual basis or specific reasons why Mr. Pimentel was deemed

inadmissible under [the] two sections of [the] INA." Id. ¶ 65.

On May 14, 2019, Mr. Pimentel, through counsel, emailed the U.S. Consulate

requesting further information about the factual bases supporting the decision to deny his visa

application.  Compl. ¶ 66.  The U.S. Consulate responded that "during the interview, beneficiary

engaged in unauthorized employment after entering the U.S. for a temporary visit." Id. ¶ 67.

Mr. Pimentel's counsel again emailed the U.S. Consulate requesting information and several

days later it "provided the factual basis for the refusal." Id. ¶¶ 68-69.

Regarding the first ground – related to misrepresentations in Mr. Pimentel's visa

application – the consular officer found that Mr. Pimentel had impermissibly engaged in work as

a cabinet installer for a carpentry firm and therefore had made a material misrepresentation in his

visa application by failing to disclose this information.  Compl. ¶¶ 70, 76.  The consular officer

further noted that despite being given the opportunity, Mr. Pimentel was "unable to rebut this

finding." Id. ¶ 70.

With respect to the second ground – related to unlawful presence in the United

States – the consular officer found that Mr. Pimentel had accrued a total of 197 days in which he

was unlawfully present in the United States.  Compl. ¶ 74.  There were two particular periods the consular officer used to calculate the total number of days.  First, Mr. Pimentel had accrued 35 days of unlawful presence during the period from January 24, 2016, when his tourist visa expired, to February 29, 2016, when his immigration status was changed as a result of Mrs. Gasparetto's approved I-539 Application to Extend/Change Nonimmigrant Status.  Id. ¶¶ 71-72.  Second, Mr. Pimentel accrued 162 days of unlawful presence during the period in which he engaged in unlawful work – from August 9, 2018, to January 17, 2019.  Id. ¶ 73.

Mr. Pimentel's previous counsel responded to the U.S. Consulate's email, disputing the consular officer's reasoning.  As to the first ground – related to material misrepresentations – Mr. Pimentel's previous counsel argued that the consular officer impermissibly applied the "90-day misrepresentation rule," which was not effective at the time of Mr. Pimentel's alleged violation.  Compl. ¶¶ 77-78; see id. ¶¶ 96-103.[4]  Previous counsel also argued that Mr. Pimentel did not materially misrepresent information in his application because he had disclosed his work in the United States.  Id. ¶ 76; see id. ¶¶ 109-17.  As for the second ground – related to Mr. Pimentel's accrual of unlawfully present days – previous counsel argued

---

[4]       The complaint and the parties' written submissions do not discuss the "90-day rule" to any significant extent.  For the sake of completeness, however, it appears that plaintiffs' previous counsel was referencing 9 Foreign Affairs Manual § 302.9-4(B)(3)(g)(2), which provides that a visa application may be denied where "an individual engages in conduct inconsistent with their nonimmigrant status within 90 days of visa application or admission to the United States."  See Compl. ¶ 70 (alleging that consular officer found that "within 90 days of his arrival," Mr. Pimentel "engag[ed] in activities that are inconsistent with the B-1/B-2 non-immigrant status").  Given the lack of discussion in the parties' submissions, the multiple grounds provided by the consular officer for denying Mr. Pimentel a visa, and the limited judicial review of the consular officer's decision – discussed more below – the Court need not determine whether the "90-day rule" was violated or applicable to Mr. Pimentel's application. See Calvary Albuquerque, Inc. v. Blinken, 720 F. Supp. 3d 1138, 1159 n.11 (D.N.M. 2024) (finding the application of the "90-day rule" "irrelevant" given multiple grounds for the denial of a visa).

that the consular officer had impermissibly relied on a "new 'unlawful presence' policy" in calculating the total number of days Mr. Pimentel had been unlawfully present. Compl. ¶ 79; see id. ¶¶ 120-30. Specifically, previous counsel highlighted a district court decision that had enjoined the Department of State from "apply[ing] the new 'unlawful presence' policy regarding when a F, M, J applicant is found to have been accruing unlawful presence." Id. ¶ 79; see Guilford Coll. v. McAleenan, 389 F. Supp. 3d 377, 384 (M.D.N.C. 2019). In other words, the suspension of this new policy meant that Mr. Pimentel had not accrued more than 180 days of unlawful presence – and was thus not inadmissible under 8 U.S.C. § 1182(a)(9)(B)(i) – because the consular officer should not count the 35 days between the expiration of his tourist visa and USCIS's approval of the I-539 Application to Extend/Change Nonimmigrant Status towards the total amount of days unlawfully present. See id. ¶ 127.[5]

On June 18, 2019, the U.S. Consulate responded that it had reviewed the arguments and concluded that Mr. Pimentel remained ineligible for the same reasons it had

---

[5]     Similar to the "90-day rule," see supra note 4, a discussion of the arguments raised by Mr. Pimentel's previous counsel is absent from the parties' written submissions in connection with the instant motion. Plaintiffs reference a case in the complaint related to the "new 'unlawful presence' policy." See Compl. ¶ 124. In that case, Guilford Coll. v. McAleenan, 389 F. Supp. 3d 377, 384 (M.D.N.C. 2019), the court enjoined a USCIS rule change related to the method of calculating days for which "F, J, and M nonimmigrant visa holders" were considered unlawfully present in the United States. In particular, the change would have "start[ed] the unlawful presence clock" on the day "on which the underlying facts that gave rise to the status violation occurred," rather than "on the date that an individual on an F, J, or M visa is adjudicated as being out-of-status." Guilford Coll. v. McAleenan, 389 F. Supp. 3d at 384-85.

While not relevant to the Court's analysis, it is unclear how this rule change applies to Mr. Pimentel since the complaint makes clear that he was not an "F, J, and M nonimmigrant visa holder[]" during the 35-day period at issue. See Compl. ¶ 72. Specifically, Mr. Pimentel's tourist visa expired on January 20, 2016, and his F-2 visa – which he obtained following Mrs. Gasparetto's approved I-539 Application to Extend/Change Nonimmigrant Status – was approved on February 29, 2016. Compl. ¶¶ 52-54. The 35 days Mr. Pimentel accrued therefore were accrued prior to the approval of his F-2 visa.

already articulated. Compl. ¶ 81. In response to previous counsel's argument that Mr. Pimentel was nonetheless entitled to a waiver of ineligibility, the U.S. Consulate indicated that the "law does not provide a waiver of these ineligibilities for immigrant visa applicants in the EW3 visa category so no further action on your client's case is possible." Id. ¶ 82. Mr. Pimentel requested reconsideration, which was denied by the U.S. Consulate. Id. ¶ 84.

## II. STANDARD OF REVIEW

### A. *Motions to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure*

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress. See, e.g., Janko v. Gates, 741 F.3d 136, 139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017). Lack of subject matter jurisdiction is fatal to a court's authority to hear a case. See FED. R. CIV. P. 12(h)(3). The plaintiffs bear the burden of establishing that the Court has jurisdiction. See Khadr v. United States, 529 F.3d 1112, 1115 (D.C. Cir. 2008); Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017). In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must construe the complaint in plaintiffs' favor and treat all well-pleaded factual allegations as true. See Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017). Although the Court must grant plaintiffs the benefit of all reasonable inferences, it "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the Court need not accept plaintiffs' legal conclusions. Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting Speelman v. United States, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). In determining whether a plaintiff has established jurisdiction,

the Court may consider materials beyond the pleadings where appropriate.  See Cumis Ins.

Soc'y, Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

### B.  *Motions to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure*

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6),

plaintiffs must plead facts that "give the defendant fair notice of what the claim is and the

grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration

in original).  Although "detailed factual allegations" are not necessary to withstand a

Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted

as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570); see Spence v. U.S. Dep't

of Veterans Affs., 109 F.4th 531, 539 (D.C. Cir. 2024).  And "[a] claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." In re Interbank Funding Corp. Sec.

Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept the

plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor."

Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022); see

Ashcroft v. Iqbal, 556 U.S. at 678.  The Court considers the complaint in its entirety, see Tellabs,

Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally,

granting plaintiffs "the benefit of all inferences that can [reasonably] be derived from the facts

alleged." See Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018)

(alteration in original).  The Court, however, need not accept all inferences drawn by the plaintiff

"if such inferences are unsupported by the facts set out in the complaint." Nurriddin v.

Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016).  Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. at 678; see also Kaempa v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits or matters subject to judicial notice.").

## III.  DISCUSSION

The complaint states two causes of action.  The first is that the consular officer's decision to deny Mr. Pimentel's visa was "arbitrary and capricious" in violation of the Administrative Procedure Act ("APA").  See Compl. ¶¶ 99-133.  The second is that the consular officer's decision violated plaintiffs' due process rights under the Fifth Amendment.  See id. ¶¶ 134-36.

Defendants argue that the complaint should be dismissed in its entirety.  Defendants first argue that the plaintiffs lack standing to sue Attorney General Merrick Garland and Secretary of State Antony Blinken because neither defendant had a role in the adjudication of Mr. Pimentel's visa application and because both defendants lack the authority to re-open and re-adjudicate the application.  See Mem. at 6-8.  As to the remaining defendant – Jacqueline Ward, U.S. Consul General, Rio De Janeiro – defendants argue that the consular nonreviewability doctrine bars judicial review of the consular officer's decision.  See id. at 8-17.

The Court begins by addressing the claims as they relate to Attorney General Merrick Garland and Secretary of State Antony Blinken and concludes by discussing the consular nonreviewability doctrine.

### A. The Attorney General is Not a Proper Defendant

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" FDA v. Alliance for Hippocratic Med., 602 U.S. 367, 378 (2024). To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." Id. at 380 (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) and Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)); accord New York Ctr. for Foreign Pol'y Affs. v. U.S. Dep't of State, Civil Action No. 20-3847 (PLF), 2024 WL 3400122, at *3 (D.D.C. July 12, 2024). If a plaintiff cannot demonstrate all three requirements for standing, the Court must dismiss the plaintiff's lawsuit for lack of jurisdiction. Hoffman v. Jeffords, 175 F. Supp. 2d 49, 53 (D.D.C. 2001), aff'd, No. 02-5006, 2002 WL 1364311 (D.C. Cir. May 6, 2002); see Warth v. Seldin, 422 U.S. 490, 502 (1975).

Here, plaintiffs have failed to establish the causation and redressability requirements of standing as they relate to Attorney General Merrick Garland. See Zakeri v. Blinken, Civil Action No. 23-3162 (TJK), 2024 WL 3273418, at *3 (D.D.C. July 2, 2024). As to the causation requirement, the plaintiffs fail to "allege any involvement of . . . the Attorney General . . . with respect to his and his family's visa applications." Siddiqui v. Blinken, 646 F. Supp. 3d 69, 75 (D.D.C. 2022). As to the redressability requirement, the plaintiffs fail to allege that the Attorney General has the authority to redress plaintiffs' injury by ordering the consular officer to re-open and re-adjudicate the visa applications. Judges in this District routinely dismiss claims against the Attorney General in actions involving challenges to the adjudication of visas. See, e.g., Zakeri v. Blinken, 2024 WL 3273418, at *3; Siddiqui v. Blinken, 646 F.

Supp. 3d at 75; Liu v. Garland, Civil Action No. 23-1914 (RBW), 2024 WL 3924564, at *4
(D.D.C. Aug. 23, 2024); Nusrat v. Blinken, Civil Action No. 21-2801 (TJK), 2022 WL 4103860,
at *4 (D.D.C. Sept. 8, 2022); Kahbasi v. Blinken, Civil Action No. 23-1667 (LLA), 2024
WL 3202222, at *4 (D.D.C. June 27, 2024); Rostamnia v. Blinken, Civil Action No. 23-1638
(RDM), 2024 WL 1328462, at *4 (D.D.C. Mar. 28, 2024).

      Plaintiffs' only justification for bringing claims against the Attorney General is
that "the Attorney General has overarching authority related to immigration enforcement and
policy," including "the power to review and interpret immigration laws." Opp. at 5. This
general argument, however, fails to provide "any connection between [the Attorney General's]
implementation of the [the immigration laws]" and the injuries alleged in this case. Kahbasi v.
Blinken, 2024 WL 3202222, at *4; see Rostamnia v. Blinken, 2024 WL 1328462, at *4.

      Plaintiffs' claims against Attorney General Garland therefore must be dismissed
for lack of standing.

### B.  The Secretary of State is Not a Proper Defendant

      The complaint must also be dismissed against the Secretary of State for lack of
standing. The Immigration and Nationality Act "grants consular officers 'exclusive authority to
review applications for visas, precluding even the Secretary of State from controlling their
determinations.'" Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021)
(quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1156 (D.C. Cir. 1999)); see 8 U.S.C.
§ 1104(a) (excluding from the Secretary of State's power and duties those "conferred upon the
consular officers relating to the granting or refusal of visas"). The grant of authority to the
consular officer in making visa determinations has led many courts to dismiss similar actions
against the Secretary of State – both because the Secretary of State does not have a role in the

adjudication of individual visa applications and because the Secretary of State cannot overturn a

consular officer's particular determination.  See, e.g., Munyaneza v. Blinken, Civil Action

No. 21-2778 (TSC), 2022 WL 4598629, at *2 (D.D.C. Sept. 30, 2022) ("[N]either the Secretary

of State nor the Acting Legal Adviser, who had no role in adjudicating [plaintiff's] application,

are properly named as defendants."); Siddiqui v. Blinken, 646 F. Supp. 3d at 75 ("Because only

the consular offices, and not the Department of State, can grant [plaintiffs'] visa applications,

and because [plaintiff] does not challenge any policy or regulation of the Department, [plaintiff]

cannot show that his injury is redressable by the Department of State officials."); Emad v. U.S.

Dep't of State, Civil Action No. 23-1789 (TJK), 2024 WL 3509485, at *2 (D.D.C. July 23, 2024)

(same); Kahbasi v. Blinken, 2024 WL 3202222, at *4; cf. Rostamnia v. Blinken, 2024

WL 1328462, at *4 ("[A]lthough the Secretary of State has no legal authority to control which

visa applications consular officers grant or deny, nothing precludes him from directing the

consular officers to decide pending applications 'within a reasonable time,' as the APA

requires.").

Plaintiffs make two arguments in response.  First, plaintiffs argue that their claims

"are challenging policy and regulations issued by the U.S. Dept. of State and that the decision of

the consular officer to deny Mr. Pimental's [sic] immigrant visa application does not follow the

Foreign Affairs Manual and the INA."  Opp. at 5.  Plaintiffs' argument conflates two separate

issues:  the first relates to policies and regulations of the Department of State and the second

relates to the consular officer's compliance with those policies and regulations.  The latter issue

does not implicate the Secretary of State inasmuch as – and as discussed above – he has "no role

in adjudicating [plaintiff's] application."  Munyaneza v. Blinken, 2022 WL 4598629, at *2.  As

for plaintiffs' purported challenges to the "policy and regulations issued by the U.S. Dept. of

State," the Court agrees with defendants that "[t]he Complaint includes no such challenge." Reply at 2. In their complaint, plaintiffs cite to two regulations: (1) the "90-day rule," Compl. ¶¶ 99-104; and (2) "a new policy that changed the calculation of how unlawful presence time is accrued for foreign students and exchange visitors." Id. ¶ 121. In both instances, however, plaintiffs do not challenge the validity of the policies themselves but instead the application of those policies by the consular officer in the context of Mr. Pimentel's application. For example, in regard to the "90-day rule," plaintiffs allege that the consular officer incorrectly applied the change in policy "retroactively" as "the rule that the U.S. consular officer applied in this case[] only went into effect after September 1, 2017." Compl. ¶ 102. In relation to "the calculation of how unlawful presence time is accrued," plaintiffs similarly allege that the consular officer "failed to follow regulations when [she] was applying a law that was enjoin in that moment." Id. at 28 (capitalization omitted). Because plaintiffs allege only the misapplication by the consular officer of the two policies and regulations rather than the validity of the policies and regulations promulgated by the Department of State, plaintiffs have not "alleged sufficient involvement by the [Secretary of State] to allow the case to continue against [him]." Kahbasi v. Blinken, 2024 WL 3202222, at *4; Siddiqui v. Blinken, 646 F. Supp. 3d at 75 (dismissing case against Secretary of State where plaintiff did "not challenge any policy or regulation of the Department").

Plaintiffs' second argument is that the Secretary of State, in fact, plays a role in visa adjudications because he "oversees" consular officers and can "issue regulations and guidance that consular officers must follow." Opp. at 6. As discussed above, however, plaintiffs do not challenge the validity of any particular "regulations and guidance" that caused the consular officer to deny Mr. Pimentel's visa application. The argument thus fails to sufficiently

allege that the Secretary of State "caused" plaintiffs' injury. See FDA v. Alliance for Hippocratic Med., 602 U.S. at 378.

Plaintiffs' claims against the Secretary of State Antony Blinken therefore must be dismissed for lack of standing.

### C. Consular Nonreviewability Doctrine

Defendants argue that plaintiffs' claims against the remaining defendant, the U.S. Consul General in Rio de Janeiro, Jacqueline Ward, must be dismissed because the consular officer's decision to deny Mr. Pimentel's visa is unreviewable under the consular nonreviewability doctrine. See Mem. at 8. The Court agrees.

"Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Baan Rao Thai Restaurant v. Pompeo, 985 F.3d at 1024. "The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." Dep't of State v. Munoz, 602 U.S. 899, 908 (2024); accord Rahman v. Blinken, Civil Action No. 23-3235 (JDB), 2024 WL 4332603, at *5 (D.D.C. Sept. 27, 2024). There are only two narrow exceptions to the doctrine: (1) "an American citizen can challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights;" and (2) a challenge can proceed "if a statute expressly authorizes judicial review of consular officers' actions." Baan Rao Thai Rest. v. Pompeo, 985 F.3d at 1024-25 (cleaned up); see Colindres v. U.S. Dep't of State, 71 F.4th 1018, 1021 (D.C. Cir. 2023), cert. denied, 144 S. Ct. 2716 (2024); Kolesnikov v. Blinken, Civil Action No. 23-1675 (TSC), 2024 WL 3638345, at *2 (D.D.C. Aug. 2, 2024). In the event a plaintiff's claim falls within one of the exceptions, a court conducts a limited review into "whether the Executive gave a 'facially legitimate and bona fide reason' for

denying the visa." Dep't of State v. Munoz, 602 U.S. at 908 (quoting Kerry v. Din, 576 U.S. 86, 103-04 (2015) (Kennedy, J., concurring in judgment)); see Colindres v. U.S. Dep't of State, 575 F. Supp. 3d 121, 131 (D.D.C. 2021) (discussing "limited judicial review" if a plaintiff's claim falls within an exception), aff'd, 71 F.4th 1018 (D.C. Cir. 2023).  Finally, although there has been some confusion in the district courts on the issue, the D.C. Circuit has directed that a dismissal on grounds of consular nonreviewability does not implicate subject matter jurisdiction; and dismissal, when appropriate, is based on failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Baan Rao Thai Rest. v. Pompeo, 985 F.3d at 1028-29 (citing Trump v. Hawaii, 585 U.S. 667, 682 (2018)).

Plaintiffs argue that their APA and constitutional claims fall within the exceptions to the consular nonreviewability doctrine.  First, they argue that their APA claims fall within the second exception because the APA "expressly authorizes judicial review of consular officers' actions."  Baan Rao Thai Rest. v. Pompeo, 985 F.3d at 1025 (citation and alterations omitted); see Opp. at 8-9.  Second, plaintiffs maintains that their constitutional claims fall within the first exception to the consular nonreviewability doctrine for claims brought by "American citizen[s]" challenging a consular officer's decision that "burdens the citizen's constitutional rights."  Baan Rao Thai Rest. v. Pompeo, 985 F.3d at 1024; see Opp. at 10-14.

The Court addresses each of these arguments in turn.

### 1.  APA Claims

Plaintiffs' argument that the APA authorizes judicial review of a consular officer's visa application determination must be rejected.  "[T]he D.C. Circuit has squarely held that the APA provides no basis for challenging consular decisions."  Carter v. U.S. Dep't of Homeland Sec., Civil Action No. 21-0422 (RCL), 2021 WL 6062655, at *5 (D.D.C. Dec. 22,

2021) (citing Saavedra Bruno v. Albright, 197 F.3d 1153, 1158 (D.C. Cir. 1999)); see Karimova v. Abate, Civil Action No. 23-5178, 2024 WL 3517852, at *6 (D.C. Cir. July 24, 2024) ("[T]his court has already held that the Administrative Procedure Act's general applicability 'runs aground' when it comes to consular visa decisions."). This is the case regardless of whether "it is alleged that the consular officer failed to follow regulations," "the applicant challenges the validity of the regulations on which the decision was based," or "the decision is alleged to have been based on a factual or legal error." Baan Rao Thai Rest. v. Pompeo, Civil Action No. 19-0058 (ESH), 2019 WL 3413415, at *2 (D.D.C. July 29, 2019), aff'd, 985 F.3d 1020 (D.C. Cir. 2021).

Plaintiffs' two arguments in opposition to this conclusion are unavailing. First, plaintiffs argue that the APA permits judicial review of a consular officer decision because review under the APA "will not be cut off unless there is a persuasive reason to believe that such was the purpose of Congress." Opp. at 9. In other words, plaintiffs maintain, judicial review under the APA is presumed unless evidence suggests Congress intended to limit such review. This argument was squarely rejected by the D.C. Circuit in Saavedra Bruno v. Albright, in which the court reasoned that "[w]hen it comes to matters touching on national security or foreign affairs – and visa determinations are such matters – the presumption of review 'runs aground.'" Saavedra Bruno v. Albright, 197 F.3d at 1162 (quoting Dep't of Navy v. Egan, 484 U.S. 518, 527 (1988)). The D.C. Circuit went on to hold that because the presumption "is the opposite of what the APA normally supposes," "there may be no judicial review of the decisions to exclude aliens unless Congress has 'expressly authorized' this." Saavedra Bruno v. Albright, 197 F.3d at 1162; see Doshi v. Blinken, Civil Action No. 23-3613 (RC), 2024 WL 3509486, at *5 (D.D.C. July 22, 2024) ("Although there is a presumption of judicial review under the APA, the Court

observed that 'the statutory scheme and the nature of the administrative action' along with the 'well-established' 'non-reviewability of alien exclusion determinations' precludes APA review.") (quoting <u>Bautista-Rosario v. Mnuchin</u>, 568 F. Supp. 3d 1, 6-7 (D.D.C. 2021)).  As discussed above, the APA contains no such express authorization to review consular officers' decisions.  <u>See</u> <u>Carter v. U.S. Dep't of Homeland Sec.</u>, 2021 WL 6062655, at *5.

Second, plaintiffs argue that judicial review is appropriate under the APA because the consular officer did "not follow the Foreign Affairs Manual or immigration regulations." Opp. at 9.[6]  This argument, however, does not provide any insight into whether the APA "expressly authorizes judicial of review of consular officers' actions," <u>Baan Rao Thai Rest. v. Pompeo</u>, 985 F.3d at 1025; and claims "that the consular officer failed to follow regulations" are barred by the consular nonreviewability doctrine.  <u>See</u> <u>Baan Rao Thai Rest. v. Pompeo</u>, 2019 WL 3413415, at *2.

Plaintiffs' APA claims therefore do not fall within the second exception to the consular nonreviewability doctrine for challenges brought pursuant to a statute "expressly

---

[6]     Among other alleged violations, plaintiffs argue that the consular officer did "not follow the Foreign Affairs Manual or immigration regulations" when the officer denied Mr. Pimentel the opportunity to file an "I-601A provisional waiver." Compl. ¶¶ 105, 131. As defendants point out, <u>see</u> Mem. at 13, Mr. Pimentel is not eligible for the applicable waivers. The waiver under 8 U.S.C. § 1182(a)(6)(C)(i) – related to material misstatements in his visa application – provides that the Attorney General may, in certain circumstances, "waive the application of clause (i) of subsection (a)(6)(C) in the case of an immigrant who is the spouse, son, or daughter of a United States citizen or of an alien lawfully admitted for permanent residence . . . ." 8 U.S.C. § 1182(i)(1).  The waiver under 8 U.S.C. § 1182(a)(9)(B)(i)(I) – related to Mr. Pimentel's accrual of unlawful days present in the United States – is only available if an individual is "a [Violence Against Women Act] self-petitioner." 8 U.S.C. § 1182(a)(9)(C)(iii). Plaintiffs have not alleged any facts suggesting Mr. Pimentel was eligible for either waiver.

authoriz[ing] judicial review of consular officers' actions." Baan Rao Thai Rest. v. Pompeo, 985 F.3d at 1024-25 (cleaned up).[7]

### 2. Constitutional Claims

Plaintiffs argue that the constitutional claims brought by the Pimentels and Nelson's Cabinetry fall within the exception to the consular nonreviewability doctrine for claims brought by "American citizen[s]" challenging "the exclusion of a noncitizen" that "burdens the citizen's constitutional rights." Baan Rao Thai Rest. v. Pompeo, 985 F.3d at 1024. The Court addresses the Pimentels' and Nelson's Cabinetry's claims separately.

### a. The Pimentels' Claims Do Not Fall Within the Exception

The Court easily concludes that the Pimentels' constitutional claims do not fall within the first exception to the consular nonreviewability doctrine for claims brought by "American citizen[s]" challenging "the exclusion of a noncitizen" that "burdens the citizen's constitutional rights." Baan Rao Thai Rest. v. Pompeo, 985 F.3d at 1024. The exception the Pimentels seek to invoke "plainly does not apply" because they are not citizens. Albrecht v. Blinken, Civil Action No. 22-1318 (APM), 2023 WL 4488282, at *2 (D.D.C. June 16, 2023), aff'd, No. 23-5157, 2024 WL 85917 (D.C. Cir. Jan. 8, 2024). Indeed, the Supreme Court recently made clear that noncitizens "cannot invoke [this] exception" because they have no

---

[7]    Plaintiffs briefly argue that 28 U.S.C. § 1331 is a basis for judicial review. See Opp. at 9. Defendants correctly point out that, at least as it relates to the claims brought against the consular officer, defendants are not challenging the Court's jurisdiction; rather, they seek dismissal of the complaint for failure to state a claim. See Reply at 4. Furthermore, any argument by plaintiffs that 28 U.S.C. § 1331 separately provides a basis for judicial review over the consular officer's decision must be rejected because "[S]ection 1331 does not in itself create substantive rights or causes of action . . . ." Mead Corp. v. United States, 490 F. Supp. 405, 407 (D.D.C. 1980); accord Stanley v. Duff, Civil Action No. 18-1746 (TSC), 2020 WL 13967974, at *2 (D.D.C. Mar. 4, 2020).

"constitutional right of entry to this country as a nonimmigrant or otherwise." <u>Dep't of State v. Munoz</u>, 602 U.S. at 908.

Plaintiffs do not directly address this issue and instead argue that courts have found that noncitizens who have "previously developed ties to the U.S." are entitled to certain constitutional protections. <u>See</u> Opp. 10-11; <u>Bautista-Rosario v. Mnuchin</u>, 568 F. Supp. 3d 1, 7 (D.D.C. 2021) ("Fifth Amendment protections do attach when aliens have come within the territory of the United States and developed substantial connections with this country.") (citation and internal quotation marks omitted). This observation, however, does not alter the Court's conclusion both because (1) plaintiffs have not identified any constitutional right outside of a right of entry to this country – which clearly does not exist, <u>see</u> <u>Dep't of State v. Munoz</u>, 602 U.S. at 908 – and (2) because any other constitutional right that may serve a basis for their claim does not change the fact that the Pimentels are not "American citizen[s]" challenging a decision that "burdens the citizen's constitutional rights." <u>Baan Rao Thai Rest. v. Pompeo</u>, 985 F.3d at 1024.

The Court therefore concludes that the constitutional claims brought by the Pimentels do not fall within the exception to the consular nonreviewability doctrine. <u>See</u> <u>Dep't of State v. Munoz</u>, 602 U.S. at 908 ("Thus, so far as [the noncitizen plaintiff] is concerned, the doctrine of consular nonreviewability applies."); <u>Rahman v. Blinken</u>, 2024 WL 4332603, at *6; <u>Albrecht v. Blinken</u>, 2023 WL 4488282, at *2 (finding constitutional exception "plainly does not apply" where plaintiff was a noncitizen), <u>aff'd</u>, No. 23-5157, 2024 WL 85917 (D.C. Cir. Jan. 8, 2024); <u>Cevallos v. U.S. Dep't of State</u>, Civil Action No. 22-2602 (JDB), 2023 WL 6276622, at *7 (D.D.C. Sept. 26, 2023) (finding exception does not apply where plaintiff failed to identify a constitutional right), <u>dismissed</u>, No. 23-5269, 2024 WL 1222050 (D.C. Cir. Mar. 20, 2024);

Smirnov v. Clinton, 806 F. Supp. 2d 1, 12 (D.D.C. 2011) ("Courts have determined that there is

no property right in an immigrant visa."), aff'd, 487 F. App'x 582 (D.C. Cir. 2012).

### b. Nelson's Cabinetry Fails to State a Constitutional Claim

Nelson's Cabinetry – unlike the Pimentels – is not categorically excluded from

invoking the exception to the consular nonreviewability doctrine.  The due process claim brought

by Nelson's Cabinetry, however, suffers from a different problem – namely, Nelson Cabinetry

fails to state a constitutional claim.  See Opp. at 12.  While plaintiffs are not entirely clear as to

whether Nelson's Cabinetry is alleging a substantive or procedural due process claim, the

complaint fails to state a claim under either theory.

The Fifth Amendment Due Process Clause protects individuals from deprivations

of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The due

process guarantee has both procedural and substantive components."  Jacinto-Castanon de

Nolasco v. U.S. Immigration & Customs Enf't, 319 F. Supp. 3d 491, 499 (D.D.C. 2018).  To

state a substantive due process claim, a plaintiff must allege a "violation of a fundamental right

'deeply rooted in this Nation's history.'"  Mahmood v. U.S. Dep't of Homeland Sec., Civil

Action No. 21-1262 (RC), 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021) (quoting Hamal v.

U.S. Dep't of Homeland Sec., Civil Action No. 19-2534 (RC), 2020 WL 2934954, at *4 n.3

(D.D.C. June 3, 2020)).  To state a procedural due process claim, a plaintiff must allege "that an

official deprived him 'of a liberty or property interest without providing appropriate procedural

protections.'"  Azeez v. Murphy, Civil Action No. 23-1947 (CRC), 2024 WL 3924565, at *6

(D.D.C. Aug. 23, 2024) (quoting Atherton v. D.C. Off. of the Mayor, 567 F.3d 672, 689 (D.C.

Cir. 2009)).  "Under either theory, a plaintiff must allege [he or] she 'has been deprived of a

fundamental right or liberty or property interest.'"  Akrayi v. United States Dep't of State, Civil

Action No. 22-1289 (CRC), 2023 WL 2424600, at *6 (D.D.C. Mar. 9, 2023) (quoting Meyou v.

U.S. Dep't of State, Civil Action No. 21-2806 (JDB), 2022 WL 1556344, at *5 (D.D.C. May 17,

2022)); Bailey v. Fed. Bureau of Prisons, Civil Action No. 24-1219 (PLF), 2024 WL 3219207,

at *11 (D.D.C. June 28, 2024) ("Before assessing what process was due, the Court must first

determine whether constitutional safeguards apply at all, i.e., whether a private party has a

property or liberty interest that triggers Fifth Amendment due process protection.") (citation and

quotation marks omitted).

   With respect to substantive due process, Nelson's Cabinetry fails to identify a

fundamental right or liberty interest that is "deeply rooted in this Nation's history and tradition."

Dep't of State v. Munoz, 602 U.S. at 910. Plaintiffs argue that the consular officer's decision to

deny Mr. Pimentel's visa implicates Nelson's Cabinetry's "interest in hiring foreign workers

when there are no qualified available U.S. workers for specific positions." Opp. at 13. Plaintiffs

do not cite to any authority recognizing this purported right and otherwise fail to provide analysis

as to why the Court should recognize such a right. The only case law plaintiffs provide in

support of this purported right involves – by plaintiffs' own admission – "a person's right to

obtain gainful employment," not an employer's right to hire foreign workers. Id.; see, e.g.,

McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 491 (1991); Truax v. Raich, 239 U.S. 33, 41

(1915) ("It requires no argument to show that the right to work for a living in the common

occupations of the community is of the very essence of the personal freedom and opportunity

that it was the purpose of the Amendment to secure"). Indeed, the few courts to consider

Nelson's Cabinetry's purported right have found it does not exist. See Spencer Enterprises, Inc.

v. United States, 229 F. Supp. 2d 1025, 1043 (E.D. Cal. 2001) ("The corporation . . . has no

constitutionally protected 'property interest' to have an alien admitted into the United States for

business purposes."), aff'd, 345 F.3d 683 (9th Cir. 2003); Commonwealth Utilities Corp. v.

Johnson, 245 F. Supp. 3d 1239, 1259 (D. N. Mar. I. 2017).

On the other hand, defendants provide significant support for their contention that

there is no fundamental right to hire foreign workers. For example, defendants identify

numerous current and historic immigration laws limiting the number of foreign workers allowed

to enter the United States, which strongly suggest that plaintiffs' purported right is not "deeply

rooted in this Nation's history and tradition." See Mem. at 13-14. Defendants also highlight the

Supreme Court's recent conclusion that the "through line of history" recognizes "the

Government's sovereign authority to set the terms governing the admission and exclusion of

noncitizens." Dep't of State v. Munoz, 602 U.S. at 911-12. Because plaintiffs do not point to a

"subsidiary tradition that curbs this authority" and because the Court must exercise "the utmost

care" when identifying fundamental rights, id. at 910, 912, the Court concludes that Nelson's

Cabinetry has not identified a fundamental right and has therefore failed to state a substantive

due process claim.

To the extent that Nelson's Cabinetry seeks to bring a procedural due process

claim, the Supreme Court's recent decision in Munoz forecloses its ability to do so. In Munoz,

the Supreme Court considered whether a plaintiff – an American citizen – could state a due

process claim after her noncitizen spouse's visa application was denied. Dep't of State v.

Munoz, 602 U.S. at 902-03. The Court held that citizens do not "have procedural due process

rights in the visa proceedings of others." Id. at 917 ("[The citizen-spouse] has suffered harm

from the denial of [the noncitizen spouse's] visa application, but that harm does not give her a

constitutional right to participate in his consular process."). In analyzing whether a third party

has a "procedural due process right in someone else's legal proceeding," the majority observed

that recognizing such a right "would have unsettling collateral consequences." Id. at 916 (emphasis in original). In particular, the majority reasoned that these claims "would usher in a new strain of constitutional law, for the Constitution does not ordinarily prevent the government from taking actions that 'indirectly or incidentally' burden a citizen's legal rights." Id. at 917 (quoting Castle Rock v. Gonzales, 545 U.S. 748, 767 (2005)).

Plaintiffs' only response to Munoz is that the Supreme Court's reasoning was subject-matter specific – that is, the holding is limited to circumstances where "visa denials impact[] spouses of U.S. citizens." Opp. at 14. The Court does not read Munoz so narrowly. As the analysis discussed above indicates, the Munoz majority was concerned with the constitutional challenges that would flow from recognizing "a procedural due process right in someone else's legal proceeding." Dep't of State v. Munoz, 602 U.S. at 916 (emphasis omitted). As the Supreme Court made clear, the "bottom line" is that its case law "does not hold that a citizen's independent constitutional right . . . gives that citizen a procedural due process right to a 'facially legitimate and bona fide reason' for why someone else's visa was denied." Id. at 919. Because plaintiffs' arguments were rejected by the Supreme Court in Munoz, the Court must dismiss Nelson's Cabinetry's procedural due process claim.

\*        \*        \*

In sum, the plaintiffs' APA claims must be dismissed because they do not fall under any of the exceptions to the consular nonreviewability doctrine. See Colindres v. U.S. Dep't of State, 575 F. Supp. 3d at 140 (finding it "unnecessary to analyze whether [plaintiff]'s visa application was denied on the basis of a facially legitimate and bona fide reason or any allegation of bad faith" where plaintiff failed to show his claims fell within an exception to the consular nonreviewability doctrine). With respect to the plaintiffs' constitutional claims, the

Pimentels' due process claim is similarly barred by the consular nonreviewability doctrine, and

Nelson's Cabinetry fails to state a due process claim.  The complaint therefore must be dismissed

in its entirety.

### D.  Plaintiffs' Request to Amend Their Complaint

Plaintiffs request that the Court grant them leave to amend the complaint in the

event the Court grants defendants' motion to dismiss.  See Opp at 16.  Plaintiffs allude to two

potential amendments, failing to specify the exact nature of the amendments and how such

amendments would resolve the issues raised in the motion to dismiss.  First, plaintiffs suggest

that they could amend the complaint to "remove Defendants that are alleged to be improper."

Opp. at 16.  Such an amendment, however, would not change the Court's conclusion that the

claims are barred by the consular nonreviewability doctrine.  Second, plaintiffs state vaguely that

they can remove a plaintiff if "either Plaintiff cannot seek judicial review under the doctrine of

consular nonreviewability."  Opp. at 16.  While it is not entirely clear what plaintiffs mean by

this, removing plaintiffs from this action will similarly not resolve the issues with respect to the

consular nonreviewability doctrine.

In any event, "the local rules in this district require that any motion for leave to

file an amended pleading be accompanied by an original of the proposed pleading as amended."

Carter v. U.S. Dep't of Homeland Sec., 2021 WL 6062655, at *6 (citing LCvR 7(i) and

LCvR 15.1).  The requirement is not a "mere formality," Kim v. United States, 840 F. Supp. 2d

180, 190 (D.D.C. 2012), aff'd, 707 F.3d 335 (D.C. Cir. 2013), and exists to determine whether

granting leave to amend is in the interest of justice.  Carter v. U.S. Dep't of Homeland Sec., 2021

WL 6062655, at *6.  Because courts are not "in a position to determine whether or not [the]

proposed amendments would be futile" absent the submission of a proposed amended pleading,

"the D.C. Circuit has held that the failure to 'tender a proposed amended complaint . . . vitiate[s] any need for the district court to explain why permitting amendment . . . [is] not in the interest of justice.'" Carter v. U.S. Dep't of Homeland Sec., 2021 WL 6062655, at *6 (quoting Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1280 (D.C. Cir. 1994)).  Plaintiffs' informal request to amend the complaint therefore must be denied.  See Lucas v. D.C., 214 F. Supp. 3d 1, 7 (D.D.C. 2016) (denying leave to amend where plaintiff failed to include a copy of the proposed amended complaint with the motion).  The request is denied without prejudice in the event plaintiffs have plausible claims to assert.

## IV. CONCLUSION

Defendants' motion to dismiss is GRANTED.  The complaint is dismissed as to defendants Secretary of State Antony Blinken and Attorney General Merrick Garland under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and as to U.S. Consul General, Rio De Janeiro, Jacqueline Ward under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE:  1|13|25

26